Judgment and order appealed from affirmed, with costs, except the order for an additional allowance of costs is modified so as to reduce such allowance from $100 to $66.15. All concur.

---

## HENNING *v.* CALDWELL.

*(Supreme Court, General Term, Fifth Department.    April 13, 1892.)*

1. RAILROAD COMPANIES—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE.
    A woman, who was driving a wagon, having partly passed over a railroad crossing of defendant company, and arrived at a position of safety between the tracks, but where her view was impeded by freight-cars of defendant standing switched near and on either side of highway, was summarily directed by a flagman of defendant, stationed on the crossing, to go forward. Acting upon such direction, and in a proper manner, she was killed by reason of her horse being startled by the too near and sudden passing of defendant's train, becoming unmanageable, and colliding with a freight train moving upon another track. *Held,* that a motion of nonsuit on the ground of contributory negligence was rightly refused, since the woman was justified in relying upon the competence and direction of the flagman, and she was shown to have exercised reasonable and proper caution for her safety up to that time.

2. SAME—INSTRUCTIONS.
    In view of the facts that the flagman must have known that the woman could not see the approaching train, and of the uncontradicted testimony as to the flagman's direction to her to go forward, a suggestion of the court below that the nearness of defendant's freight-cars to the highway might have some bearing upon defendant's negligence is immaterial.

Appeal from circuit court, Erie county.

Action by Jacob Henning, as administrator *de bonis non* of Fredericka Henning, deceased, against Daniel W. Caldwell, as receiver of the New York, Chicago & St. Louis Railway Company, to recover damages for killing of Fredericka Henning. Judgment for plaintiff. Defendant moved at special term for a new trial. Denied. Defendant appeals. Affirmed.

Argued before DWIGHT, P. J., and MACOMBER, J.

*John G. Milburn,* for appellant.    *C. M. Bushnell,* for respondent.

MACOMBER, J.    This action was brought by Christian Henning, as administrator of the estate of Fredericka Henning, to recover damages sustained by the next of kin through the negligent killing of the deceased by steam-cars operated by the defendant. The accident happened on the 2d day of May, 1885. Christian Henning, however, died in the month of June, 1887, and this plaintiff was accordingly substituted in his place. Besides the husband, now deceased, Fredericka Henning left as her next of kin six children. On the day when the deceased received her injuries, which proved immediately fatal, she was driving a one-horse market gardening wagon along what was known as the "Abbott Road," within the corporate limits of the city of Buffalo, and was proceeding westerly, having her daughter with her in the vehicle. At or near the point where the woman was killed the Abbott road was crossed at an angle of about 75 degrees, by eight tracks, running in a northerly and southerly direction. The first three tracks belonged to the New York, Chicago & St. Louis Railway Company, and were operated by the defendant. These three tracks terminated in a single track leading to a roundhouse a short distance south of the Abbott road. Sixty-one feet west of these three tracks was

a single track, also belonging to the defendant, called the "Nickel Plate Track;" 45½ feet west of this single track was the defendant's main track, called the "Nickel Plate Main Track;" 7 feet westward of the defendant's main track was the track of the Buffalo, New York & Philadelphia Railroad; 78½ feet beyond this last-named track was the first track of the Buffalo Creek Railroad; and 7 feet west of the first track of the Buffalo Creek Railroad was its second track. As the deceased approached this crossing, she stopped her horse before reaching any track, for a train or a locomotive of the defendant to pass. Her daughter alighted from the wagon, with a clock in her hands, and carried the same across the tracks. Thereupon the deceased passed over the first three tracks, and again paused in the 61-foot space between the defendant's three tracks and its side track. Upon either side of and close to this highway there were box-cars standing, which belonged to the defendant. The train, mainly of box-cars, had been cut in two, and the cars thus placed, in order not unnecessarily to block the street. The second stop made by the deceased was just west of the track upon which these cars were. Evidence of a satisfactory character is given, showing that a person at a point where the defendant was shown to be could not see a train going south on the main line of the defendant's track. While the woman remained in this spot, which was a place of safety, a flagman, who was stationed at the two tracks running parallel with each other, and who, it is shown, was standing on the easterly side of these two tracks, signaled her in a very urgent manner to pass on over the remaining tracks, telling her to come along "lively." As the deceased came across these tracks a passenger train was going out on the defendant's track westerly of these two tracks at a rapid rate of speed. The deceased had just got across the track upon which the train was running as the engine passed in behind her wagon. At that time the engineer of the locomotive gave a startling sound,—a "popping noise," as the witness described it,— which so frightened the horse that he became unmanageable, and ran against a freight-train that was backing up upon the track of the Buffalo Creek Railroad, and there plaintiff's intestate was killed. The position of the flagman at the time mentioned, the conduct of the horse of the decedent, the rate of speed of the passenger train, and its mode of approach were subject-matters of some dispute in the evidence. But the jury was warranted in finding the facts as above stated. Evidence was also adduced to show that the horse was one of a safe, gentle, and amiable disposition, accustomed to the ordinary hazards of crossing railroad tracks, and that the deceased herself was familiar with this crossing, and that she had been engaged four or five years in market gardening, using the same horse, and in the prosecution of such business had frequently passed over this crossing. The woman was 54 years of age, in good health, and was large and muscular. When the deceased was signaled by the flagman to cross, it is shown that she proceeded in a proper, ordinary, and safe way, at a slow gait, described by one of the witnesses as between a trot and walk; that the horse showed no special symptoms of fright until after crossing the track immediately ahead of the locomotive which made the startling noises; and it was only from that instant that the animal was shown to be unmanageable. These facts, we think, made out a case that was properly submitted to the jury.

It is argued by the learned counsel for the appellant, from some of the testimony in the case, that the plaintiff herself must have been able to see the approach of the passenger train, and that she could have seen it if she had used her senses. This argument would be more persuasive had the woman undertaken to make this crossing depending entirely upon her own observation of the danger. When the summary direction was given her by the flagman she had a right to assume that the man who had been placed there was competent to give the direction, and to observe accurately whether or not it was safe for such direction to be then given. The question is not whether the woman.

exercised proper care of her person by choosing to obey the direction of the flagman rather than to obey the evidence of her own eyes. Had it been shown that she actually did see the approach of the train under circumstances indicating that it was to cross the highway, she could not, of course, absolve herself from the imputation of contributory negligence upon the flimsy excuse that she chose rather to obey the summons of the flagman than the admonition of her own senses. But the case presents no such situation as this. It is rather one whether, at the very instant of the direction given by the flagman, the deceased was shown to exercise reasonable and proper caution for her own safety in her endeavors to make this crossing. Very little need be said in regard to the negligence of the flagman which is imputable to the defendant. In the motion for a nonsuit no claim was made that the flagman was not guilty of negligence. The ground of the motion was, exclusively, that the deceased herself was guilty of acts which contributed to her injuries. This applies, however, only to the negligence of the defendant in respect to the acts of its agent at the moment of the collision with the train, and leaves open the question of negligence ascribable to the defendant, irrespective of this particular act of the flagman; and this question we will now consider. The learned trial justice, in a somewhat doubting way, submitted to the jury, as is claimed by the learned counsel for the appellant, the question whether it was negligence on the part of the defendant to have its box-cars, which composed a train, standing on each side of the highway in such proximity to the highway as to obscure the approach of the passenger train. The learned justice, in his charge, said to the jury: "There is, perhaps, another fact that the plaintiff claims has a bearing especially upon another question in this case, and that is the fact that this freight train on the single track,—the switch track, —the freight-cars were standing so near to the highway that they impeded the view of the deceased as she passed along." At the conclusion of the charge the defendant's counsel requested the court to charge the jury that they could not hold the defendant negligent by reason of the movement of the cars on any other track except on this track upon which the passenger train came, and in respect to that passenger train. "*By the Court.* Yes, that is the only one, except the contiguity of these cars to the highway; that may be taken into consideration in judging of her negligence. *By Defendant's Counsel.* But not in judging of defendant's negligence. *By the Court.* Well, I do not know quite about that. It may be a question for the jury as to those cars being so near the track, as bearing upon the defendant's negligence somewhat." To this charge, and to the court's refusal to charge as requested, the counsel for the defendant thereupon duly excepted. If, by this portion of the charge, it was intended to instruct the jury that the defendant was guilty of negligence in having the cars stand in these places, we think it would be error, except as it is in this instance directly connected with the act of the flagman. If the situation was such that the flagman must have known that the traveler could not see the approach of the train, and that she would necessarily be dependent wholly upon his direction for guidance in getting across the tracks, unquestionably the duty of greater diligence on his part was owing to the traveling public. In this view of the case, the suggestion of the court that the situation of these cars might have some bearing upon the defendant's negligence was wholly immaterial, in view of the uncontradicted testimony relating to the order given by the flagman to the woman to go forward.

Another question is argued by the counsel for the appellant relating to the influence upon the amount of the verdict of the death of the husband; but we regard the point as somewhat speculative, and as not requiring discussion. The verdict in this case was $3,000. The next of kin consisted of six children. The woman was 54 years of age, strong, active, and was conducting the general business of market gardening. With these six children to a

greater or less extent dependent upon her for support, the verdict does not appear to us to be in any way excessive, and consequently we think it should be affirmed.    Judgment and order appealed from affirmed.